IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 18, 2018 Session

## JOHNSON REAL ESTATE LIMITED PARTNERSHIP v. VACATION DEVELOPMENT CORP., ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 17-1-002      Telford E. Forgety, Jr., Chancellor**

_____

### No. E2017-01774-COA-R3-CV

_____

This action involves a long-term ground lease in which the defendant lessee paid for and maintained an insurance policy on the property for its benefit. The defendant surrendered the premises after the motel facility constructed on the land was destroyed by a wildfire before the expiration of the lease. The plaintiff lessor filed suit, seeking an equitable lien on the policy and its proceeds, a constructive trust against the insurance rights and recovery, a claim on the policy as a third-party beneficiary, and injunctive relief. The court granted summary judgment in favor of the defendant. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and RICHARD H. DINKINS, J., joined.

R. Louis Crossley, Jr., Knoxville, Tennessee, for the appellant, Johnson Real Estate Limited Partnership.

Ronald T. Hill, Knoxville, Tennessee, for the appellees, Vacation Development Corp. and Hugh D. Faust, III.

### OPINION

### I.      BACKGROUND

The long-term ground lease at issue was between Johnson Real Estate Limited Partnership ("Plaintiff") and Vacation Development Corporation ("Defendant") for four acres of land located on River Road in Gatlinburg, Tennessee. The lease provided a term of 50 years, beginning on October 15, 1969, and ending on October 15, 2019. As

pertinent to this appeal, the lease required Defendant to construct "modern motel facilities at a cost of not less than [$500,000]" within 18 months of the date of the agreement and to remit payment of $15,000 on the date of the execution of the lease and $20,000 per year, plus 7 percent of the gross receipts exceeding the sum of $20,000. The lease further provided that at the "termination or cancellation of [the agreement] all improvements thereon shall become the property of the Lessor." The Parties were not required to carry property insurance; however, Defendant was required to carry public liability insurance and to pay all taxes, utilities, license fees, and expenses of "every kind and nature incident to the use of said premises." Defendant constructed the motel facilities, which became known as the Riverhouse Motor Lodge ("the Motel"). Since that time, the original Lessors assigned their interests to Plaintiff.

Defendant insured the Motel and another of its properties under a single commercial insurance policy obtained through Travelers Indemnity Company of America ("Insurance Company"). Defendant paid all premiums for the policy that covered both facilities with a policy limit of $8,122,974.

The Motel was destroyed by the Gatlinburg wildfires in November 2016. Defendant advised Plaintiff that it would not rebuild the Motel unless Plaintiff entered into a new 50-year lease on the same terms as the current lease, with the exception that the new lease would include an insurance provision. Plaintiff filed suit against Defendant and Insurance Company for anticipatory breach of the agreement. Plaintiff sought an equitable lien on the insurance policy and its proceeds, a constructive trust against the insurance rights and recovery, a claim on the policy as a third-party beneficiary, and injunctive relief. Thereafter, Defendant notified Plaintiff of its surrender of the property and termination of the lease via letter, dated March 17, 2017, which provided as follows:

> As you know, [the Motel] constructed by [Defendant] on the real property owned by [Plaintiff] on River Road in Gatlinburg, Tennessee was totally destroyed by fire on November 28, 2016. Accordingly, and pursuant to the provisions of [Tennessee Code Annotated section 66-7-102], [Defendant] hereby surrenders possession of the real property and terminates its Lease Agreement as above captioned effective as of the date of this letter.

Section 66-7-102 provides as follows:

> (a)  Where any building which is leased or occupied is destroyed or so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without fault or neglect by the lessee, surrender possession of the premises,

without liability to the lessor or owner for rent for the time subsequent to the surrender.

(b)     A covenant or promise by the lessee to leave or restore the premises in good repair shall not have the effect to bind the lessee to erect or pay for such buildings as may be so destroyed, unless in respect of the matter of loss or destruction there was neglect or fault on the lessee's part, or unless the lessee has expressly stipulated in writing to be so bound.

The Parties filed cross-motions for summary judgment. The court granted summary judgment in favor of Defendant, finding that Defendant had properly terminated the lease and surrendered the property pursuant to Section 66-7-102 and that Defendant was not required to rebuild the motel facilities.

## II.     ISSUES[1]

A.     Whether Defendant properly terminated the lease pursuant to Section 66-7-102.

B.     Whether Defendant is required to rebuild the motel facilities pursuant to the terms of the lease agreement and the implied covenants of good faith and fair dealing and continuous occupancy.

## III.     STANDARD OF REVIEW

The appropriate summary judgment standard to be applied is as follows:

[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a properly supported motion is made, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in [Rule 56 of the Tennessee Rules of Civil Procedure], 'set forth specific facts' at the summary judgment stage 'showing that there is a genuine issue

---

[1] Insurance Company was relieved from filing a responsive brief given the tangential nature of its involvement.

for trial.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Rye*, 477 S.W.3d at 250 (citations omitted). "In doing so, we make a fresh determination of whether the requirements of [Rule 56] have been satisfied." *Id.* (citations omitted). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). This action also presents a matter of statutory interpretation, which is reviewable as a matter of law pursuant to the de novo standard without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citing *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000)); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).

## IV.    DISCUSSION

### A. & B.

Plaintiff urges this court to consider the legislative history of Section 66-7-102 and a case decided two years prior to its passage. *See Zuccarello v. Clifton*, 12 Tenn. App. 286, 289 (Tenn. App. 1930) (holding that the destruction of the building by fire did not remove a covenant to repair contained in the lease). Plaintiff claims that Section 66-7-102 does not address the precise issue raised in *Zuccarello* and now raised here, whether a ground tenant must rebuild a building it erected when said building was to transfer to the landowner at the end of the term. Defendant responds that termination of the lease is appropriate when the statute is unambiguous and makes no distinction between a ground lease and a real property lease. Defendant notes that our Supreme Court recognized in *EVCO Corp. v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975), that the statute overruled the holding in *Zuccarello*. Further, the facts at issue here are distinguishable from the facts in *Zuccarello*, namely the lease in this case does not include a covenant to repair.

The primary objective of statutory interpretation is to carry out the legislative intent without broadening or restricting a statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we

apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). We also presume that the General Assembly was aware of the state of the law when the statutes were enacted and that it did not intend to enact a useless statute. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010).

Plaintiff presents a thorough legislative history of Section 66-7-102 in support of its argument that we should rely upon the court's decision in *Zuccarello*. This case is distinguishable from the holding in *Zuccarello*, which imposed an obligation to rebuild based upon a covenant to repair, a covenant not included here. Moreover, the statute at issue here is unambiguous. We need not consider the legislative history or whether the statute was enacted in response to *Zuccarello* when the plain language clearly overrules the holding in *Zuccarello*. *See EVCO Corp.*, 528 S.W.2d at 23-24 (providing that the lessors of a building destroyed by fire would have had the statutory right to terminate the lease pursuant to Section 66-7-102, absent provisions in the lease providing otherwise). The legislature specifically exempted those lessees or occupants who included such a covenant to repair from an obligation to rebuild. Indeed, the statute provides as follows:

> (a)     Where any building which is *leased or occupied* is destroyed or so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, and *no express agreement to the contrary has been made in writing*, the lessee or occupant may, if the destruction or injury occurred without fault or neglect by the lessee, surrender possession of the premises, without liability to the lessor or owner for rent for the time subsequent to the surrender.

> (b)     A covenant or promise by the lessee to leave or restore the premises in good repair shall not have the effect to bind the lessee to erect or pay for such buildings as may be so destroyed, unless in respect of the matter of loss or destruction there was neglect or fault on the lessee's part, or unless the lessee has *expressly stipulated in writing to be so bound*.

Tenn. Code Ann. § 66-7-102 (emphasis added). Our plain reading of the statute leads us to conclude that the statute controls when the Parties did not contract to rebuild or insure the Motel in the case of destruction by the elements. We believe this interpretation is within the legislature's intent as evidenced by the use of the words "leased or occupied" in 66-7-102(a).

Plaintiff next argues that the court erred in finding that the lease did not require Defendant to rebuild when the lease anticipated that a building would pass at the end of the term. Plaintiff claims that Defendant has received a windfall of insurance proceeds without an obligation to rebuild. Plaintiff asserts that the court in *Zuccarello* held

otherwise and that the covenants of good faith and fair dealing and continuous occupancy require Defendant to rebuild. Defendant responds that the lease did not include an obligation to repair or rebuild as found in *Zuccarello* and that the covenants of good faith and fair dealing and continuous occupancy cannot create a contractual right to rebuild where one does not exist in the agreement. Plaintiff issues a reply brief in which it argues, inter alia, that the court and Defendant failed to recognize the distinction between a real property lease and a ground lease requiring the tenant to construct the building. Plaintiff claims that the plain language of Section 66-7-102 does not apply to such leases and that the implied covenant of good faith and fair dealing found in all contracts would necessarily include the transfer of a building at the end of the lease term that anticipated the construction of the same by the tenant.

Again, the plain language of the statute belies Plaintiff's assertion and unambiguously removes any obligation to rebuild, unless the Parties contracted otherwise. The Parties did not contract otherwise, and this court cannot impose such a provision. Accordingly, we hold that the Defendant was within its rights to terminate the lease agreement and surrender the leased premises following the destruction of the Motel.

## V. CONCLUSION

We affirm the decision of the trial court and remand for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Johnson Real Estate Limited Partnership.

_____
JOHN W. McCLARTY, JUDGE